**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PETER POWELL,**

                                              **Plaintiff,**

                -v-                                              **6:17-CV-147 (TJM)**

**HP HOOD, LLC,**

                                              **Defendant.**
_____
**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

## I.    INTRODUCTION

Plaintiff Peter Powell commenced this action against his former employer, Defendant

HP Hood, LLC, asserting that he was wrongfully terminated on February 29, 2016 due to his

age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 _et seq_.

("ADEA").  Compl., Dkt. # 1, ¶ 12.  Presently before the Court is Defendant's motion for

summary judgment pursuant to Fed. R. Civ. P. 56 seeking to dismiss Plaintiff's complaint in

its entirety.  Dkt. # 22.  Plaintiff opposes the motion.  Dkt. # 23.  For the reasons that follow,

the motion is granted.

## II.    STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed

facts in the light most favorable to the non-moving party, _see Scott v. Harris_, 127 S. Ct.

1769, 1776 (2007), and may grant summary judgment only where "there is no genuine

1

issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment, who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial*. Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir.1997) (citations omitted).

While the Court must view all admissible facts in the light most favorable to the nonmoving party, it need do so "only if there is a 'genuine' dispute as to those facts." *Scott,* 127 S. Ct. at 1776. The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, or by a factual argument based on "conjecture or surmise." *Bryant v. Maffucci,*

2

923 F.2d 979, 982 (2d Cir. 1991). In this regard, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in the pleadings, *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). A "nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)).

Courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); however, "'[s]ummary judgment is appropriate even in discrimination cases, for . . . the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation.'" *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 415 (2d Cir. 2011)(quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)). Indeed, "'[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'" *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)); *see Holcomb*, 521 F.3d at 137 ("Even in the discrimination context, [] a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."); *Inguanzo v. Hous. & Servs., Inc.*, 2014 U.S. Dist. LEXIS 132197, 31-32 (S.D.N.Y. Sept. 19, 2014). ("'[W]hen an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no

material issue of fact exists and it may grant summary judgment to the employer.'")(quoting

*Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010)).

### III.    BACKGROUND

Unless indicated otherwise, the following facts are admitted by the opposing party,

properly supported by the record, or deemed admitted. *See* Local Rule 7.1(a)(3).

Defendant HP Hood, LLC ("HP Hood" or "Defendant") produces quality cultured dairy

products (cottage cheese and Greek Yogurt) at its Vernon, New York facility.  Powell was

employed by HP Hood from February 17, 1982 until February 29, 2016.  Defendant's L.R.

7.1(a)(3) Statement of Undisputed Material Facts ("Def. Stat. Facts"), Dkt. # 22-20, ¶1; *see*

*also* Fox Decl. ¶3).  At the time of his termination on February 29, 2016, Powell was 55

years old and held the position of First Shift Supervisor.  Def. Stat. Facts, ¶3; Fox Decl. ¶5.

According to HP Hood, Powell began to exhibit performance issues and

unprofessional conduct in 2012.  Fox Decl. ¶9.  From September 2012 to February 29,

2016, Powell was the subject of six disciplines, with the last resulting in his termination. Def.

Stat. Facts, ¶¶ 16-28.  These six disciplines were issued by three different supervisors:

Philip Campbell (former Plant Manager), Josh Johnson (former Operations Manager), and

Lisa Bouchard (Operations Manager).  Def. Stat. Facts, ¶17.  Five out of the six disciplines

were issued by supervisors who were either the same age or significantly older than Powell.

Def. Stat. Facts, ¶18.  Although Plaintiff challenges only the facts behind two of these

disciplines, he asserts that all were part of "a paper trail of several manufactured disciplinary

events which was intended to pre-textually excuse or justify Defendant's [*sic*] termination

from employment."  Plaintiff's Separate Statement of Contested Material Facts ("Pl. Sep.

Stat. Facts"), Dkt. # 23, p. 11, ¶12.   Plaintiff further asserts that he "performed his duties satisfactorily" and that he "does not wish to give any credence whatsoever to these series of false allegations by addressing each one." *Id.*  To the extent Defendant's evidence supports the disciplinary conclusions reached on the disciplines Plaintiff does not challenge, the Court deems this evidence established for purposes of this motion.  Because Defendant asserts that Plaintiff's termination was a result of progressive discipline based upon Plaintiff's history of deficient workplace performance and unprofessional conduct, the Court reviews the disciplines.

### September 2012 Memo of  Expectations

On September 13, 2012, Plaintiff was issued a Memo of Expectations by former Plant Manager Philip Campbell ("Campbell").  Def. Stat. Facts, ¶19(a); Def. Ex. 10.  The subject of the Memo of Expectations was: "Business Conduct and Workplace Violence Violation."  Def. Ex. 10.  The memo was issued after an investigation determined that Plaintiff acted in an aggressive and intimidating manner towards another employee. Def. Ex. 10; Fox Decl. ¶9.  Specifically, it was determined that Powell raised his voice when he felt the individual called him a liar and then aggravated the situation by following the individual into another area, continuing to yell at him, and blocking his primary path to exit the room.  Def. Ex. 10; Fox Decl. ¶9.  As a result of this behavior, Campbell issued Powell the Memo of  Expectations advising Powell that his behavior was unacceptable, particularly since Powell was a supervisor.  Def. Ex. 10; Fox Decl. ¶9.

### April 24, 2013 Final Warning

On April 24, 2013,  Powell's former manager, Josh Johnson ("Johnson"), issued

Plaintiff a written Final Warning. Def. Stat. Facts, ¶19(b); Def. Ex. 11; Fox Decl. ¶10.  This written warning was issued because Powell acted in an aggressive and threatening manner toward the Company's then-Human Resources Manager, April Tharpe ("Tharpe").  Def. Ex. 11; Fox Decl. ¶10.  It was determined that Powell was rude, hostile and disrespectful toward Tharpe in the presence of three other individuals while attempting to discuss a situation involving his wife (who also works at HP Hood). Fox Decl. ¶10.

### April 30, 2014 Memo of Expectations and Suspension

On April 30, 2014, Powell was issued a Memo of Expectations by Johnson with the subject being: "Quality and Documentation Deficiencies." Def. Stat. Facts, ¶19(c); Def. Ex. 12.  This Memo of Expectations was issued because an investigation determined that Plaintiff allowed an employee to sign off on work that Powell knew the employee had not completed himself. Def. Ex. 12; Fox Decl. ¶11.  As a result of this incident, Johnson, rather than proceed to termination, issued Powell the Memo of Expectations, along with a two day unpaid suspension. Def. Ex. 12; Fox Decl. ¶11.

### April 20, 2015 Memo of Expectations

On April 20, 2015, Johnson issued Plaintiff another Memo of Expectations with the subject being: "Failure to Follow Guidelines and Procedures."  Def. Stat. Facts, ¶19(d); Def. Ex. 13.  The Memo indicates that it was brought to Johnson's attention that Plaintiff "took it upon [himself] to review a file that was on [Plant Manager Campbell's] desk, without approval to do so. This action is considered an invasion of privacy, as well as being unethical." Def. Ex. 13.

Powell asserts he went into Campbell's office in accordance with Campbell's "open-

door policy."  Campbell was not there, so Powell waited in his office for him to return.

Defendant asserts that once in the office, Powell took it upon himself to open a file that had

Powell's name on it.  Fox Decl. ¶ 12.  Defendant further asserts that Campbell did not

authorize Powell to touch anything on his desk, let alone open a confidential file. *Id.*

Although Plaintiff signed this Memo of Expectations, he asserts that he did not open any file

on Campbell's desk.  Rather, Plaintiff asserts, he observed a note on Campbell's

"conference table with Plaintiff's name written on the folder."  *See* Pl. Sep. Stat. Facts, ¶ 5

(citing Pl. Trans. at pp. 77, 88, 89, 90-100 and 108).  Plaintiff contends that he did not touch

or manipulate the folder, but saw that the note read "I think Peter Powell has outlived his

usefulness for HP Hood" (paraphrased from Plaintiff's memory). *Id.*  ¶ 6 (citing Pl. Trans. at

77, 88, 89, 90-100 and 108).  Following seeing this note, Plaintiff requested the HP Hood

Human Resources office to provide a copy of his employment folder, but this request was

denied. *Id.* ¶ 9 (citing Pl. Trans. at 88).

### June 11, 2015 Memo of Expectations

On June 11, 2015, Johnson issued Powell another Memo of Expectations, this one

with the subject: "Failure to Meet Expectations on Various Levels and Assignments." Def.

Stat. Facts, ¶19(e); Def. Ex. 14.   This Memo indicates:

> During the past few months there has been a noticeable decline in Peter's
> performance and attitude. This is seen in Peter's comments, actions and lack
> of performance.  For example, on or about June 2, 2015, while having a
> conversation with Operations Manager Josh Johnson, Peter made the
> statement, "I am burnt out I do not do things because I do not want to." Peter
> appears to have lost all respect for fellow managers as well as direct reports.
> In addition, Peter seems to not be putting his efforts  into his performance.

Def. Ex. 14.

7

This Memo was issued in response to Plaintiff's poor performance, unprofessional conduct and lack of leadership as a supervisor.  Fox Decl. ¶13.  Specifically, Powell had issues with product quality, employee engagement, communication, failure to issue proper documentation, and managing shift labor efforts. *Id.*  Performance areas for which Plaintiff was expected to improve were detailed in the June 11, 2015 Memo of Expectations, and the Plaintiff was required to meet with the Operations Manager and HR once every two weeks to review and monitor his progress. Def.  Ex. 14; Fox Decl. ¶13.  The Memo further indicated that Plaintiff's failure to meet the expectations listed in the Memo "may subject you to disciplinary action, up to and including termination of employment." Def.  Ex. 14.  Plaintiff did not complain to anybody in the Human Resources Department that the June 11, 2015 Memo of Expectations was issued because of his age. Pl. Tr. at 48.

### January 22, 2016 Memo of Expectations[1]

Lisa Bouchard ("Bouchard"), the new Operations Manager,  issued Powell a Memo of Expectations concerning Plaintiff's conduct in January 2016.  Def. Stat. Facts, ¶19(f); Def. Ex. 15; Fox Decl. ¶15.  The subject of the Memo was: "Failure to Follow Guidelines and Procedures and Unprofessional Behavior."  The Memo was issued because, on January 14, 2416, an employee suffered a back injury while working on the palletizing line and approached Powell. Def. Ex. 15; Fox Decl. ¶15.  Powell did not follow proper safety procedures when responding to this issue and his failure to do so resulted in an OSHA recordable and lost-time incident. Def. Ex. 15; Fox Decl. ¶15.  In addition, around that same time period, Powell was observed having another unprofessional interaction with a

---

[1]This Memo addresses conduct on January 14, 2016.  It appears, as Defendant asserts, the Memo was inadvertently dated January 22, 2015, rather than January 22, 2016.

co-worker.  Def. Ex. 15; Fox Decl. ¶15.  Again, Plaintiff was warned that failure to meet the

employer's expectations could subject him to disciplinary action "up to and including

termination of employment." Def. Ex. 15.

### February 29, 2016 Notification of Separation

On February 29, 2016, Plaintiff was issued a "Notice of Separation" notifying him that

he was terminated.  Def. Stat. Facts, ¶28.  The Notice of Separation concerned an  incident

that occurred on Saturday, February 15, 2016.  *Id.*  On this date, a Blender Operator,

Anthony Stasio ("Stasio"), approached Powell with a production concern in the High

Temperature Short Time (HTST) room.  Pl. Tr. at 53.  The HTST room is used to heat all

raw products to a designated temperature and then cool them to a designated temperature

in order to ensure proper pasteurization prior to production.  Early in the shift, Stasio

informed Powell that a cottage cheese blender was processing at an exceptionally high

temperature of 56 or 57 degrees. Pl. Tr. 53.  Company procedure and New York State

regulations require that the temperature of the tank cannot exceed 45 degrees. Guisinger

Decl. ¶10; Fox Decl. ¶¶16-17; Pl. Tr. 49-52.  Rather than attempting to address the

problem, Powell stated to Stasio: "What do you want me to do, put ice cubes in it? I can't

cool it." Pl. Tr. 53; Fox Decl. ¶18; Guisinger. Decl. ¶11.  Despite being aware of HP Hood's

procedures, Powell did not give Stasio clear direction nor did he instruct him to stop

blending the product.  Pl. Tr. 53; Guisinger Decl. ¶8-9, 11; Fox Decl. ¶¶17-18.  Powell also

failed to notify Don Fox ("Fox"), the new Plant Manager, or take any other remedial action

so that HP Hood could determine the appropriate course of action and potentially save the

product. Fox Decl. ¶¶17-18.

HP Hood's current Human Resource Specialist, Stacey Guisinger ("Guisinger"), initiated an investigation into the February 15 incident. Guisinger Decl. ¶6.  Guisinger spoke with Stasio who confirmed the events as described above. Guisinger Decl. ¶8.  Guisinger also spoke with Scott Sawyer, the Operations Project Manager, who overheard the conversation between Powell and Stasio. Guisinger Decl. ¶9. Sawyer corroborated Stasio's version of events. *Id.*

Guisinger, Fox and Bouchard then met with Powell on February 22, 2016, to provide him with an opportunity to explain what transpired on February 15. Guisinger Decl. ¶11; Fox Decl. ¶18.  During the meeting, Powell admitted that he did not tell Stasio to stop blending the product. Pl. Tr. 53; Guisinger Decl. ¶11; Fox Decl. ¶18.  Powell also admitted that he told Stasio: "What do you want me to do, put ice in it? I can't cool it." Pl. Tr. 53; Guisinger Decl. ¶11; Fox Decl. ¶18.   During this meeting, Powell failed to provide any explanation for his failure to inform Fox or any other member of management of the issue.  Guisinger Decl. ¶11; Fox Decl. ¶18.  At the conclusion of the meeting, Fox notified Powell that he would be suspended pending the outcome of the Company's investigation.  Fox Decl. ¶19.  Powell did not claim to Fox or Guisinger that this suspension was due to his age.  Fox Decl. ¶19; Guisinger Decl. ¶12.

Defendant contends that Powell's failure to respond appropriately in this situation resulted in $11,858 in lost product.  Fox Decl. ¶17.  Plaintiff states in his affidavit that "[t]he product would not have been a loss because it is reworked. Check labs [*sic*] log." Pl. Aff. ¶ 26.  Plaintiff provides no further elaboration on what it means to "rework" the product, nor does he provide the Defendant's lab's log for this date.

Defendant asserts that, as a result of this incident as well as Powell's history of progressive discipline, Fox, in consultation with Bouchard and Guisinger, made the decision to terminate Powell's employment effective February 29, 2016.  Fox Decl. ¶20; Guisinger Decl. ¶13.  Powell was informed of this decision in person on the same day and provided with a Notification of Separation.  Pl. Tr. 59; Fox. Decl. ¶21; Def. Ex. 16.

Plaintiff argues that his behavior on February 15, 2016 "was proper, customary and expected conduct even though it may not have been protocol pursuant to written guidelines."  Pl. Resp. to Def. Stat. Facts, ¶23.  Plaintiff asserts in his affidavit that "[i]n the past we have put blocks of ice into the Ice Bank when the system was down," and that on the date in question the system was down from "late Friday night until sometime Monday."  Powell Aff., Dkt. # 23-1, ¶¶ 23, 23(b).  Plaintiff further claims that "he did not oversee the blending of the batch at issue; he inherited it from a previous shift supervisor, Brandon Cook, who left as soon as Plaintiff arrived at work."  *Id.* ¶ 25.  As such, Plaintiff asserts that "Cook was the supervisor required to report [the incident], not Plaintiff."  *Id.*  As indicated above, Plaintiff also claims "the product would not have been a loss [to Defendant]" as batches like this can be "reworked."  *Id.* ¶ 26.

### Circumstances Surrounding Plaintiff's Discharge

At the time Plaintiff was terminated on February 29, 2016, he was 55 years old.  Def. Stat. of Facts, ¶3.  The individuals responsible for Plaintiff's termination were Fox, the Plant Manager who was 58 years old, Bouchard, the Operations Manager who was 43 years old, and Guisinger, a Human Resources Specialist who was 39 years old. *Id.* ¶¶ 27, 30, 33-34. Following Plaintiff's termination, Defendant offered the job to Timothy Ano, a Relief

11

Supervisor,[2] who was 51 years old at the time. *Id.* ¶ 5, 6.  When Ano declined the position,

Defendant filled it with Christopher Wilkinson, an HP Hood supervisor who was then 29

years old. *Id.* ¶ 4.

## IV.    DISCUSSION

### A. Legal Standard for ADEA Claim

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge

any individual or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's

age." 29 U.S.C. §623(a)(1).  ADEA claims are examined under the burden-shifting

framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d

93, 106 (2d Cir. 2010).

Under *McDonnell Douglas*, Plaintiff "bears the initial burden of establishing a prima

facie case of discrimination." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir.

2014)(internal quotation marks and citation omitted).  If Plaintiff meets this burden, HP Hood

must then articulate "some legitimate, nondiscriminatory reason for its action" in discharging

Plaintiff. *Id.* (internal quotation marks and citation omitted). "'The defendant need not

persuade the court that it was actually motivated by the proffered reason[ ].  It is sufficient if

the defendant's evidence raises a genuine issue of fact as to whether it discriminated

against the plaintiff.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254,

---

[2]While Defendant refers to Timothy Ano as a "Production Supervisor," *see* Def. Stat. Facts, ¶ 6, Plaintiff claims Ano's job title was actually "Relief Supervisor," *see* Pl. Aff. ¶ 6.  Viewing the evidence in the light most favorable to Plaintiff, the Court refers to Ano as a "Relief Supervisor."

101 S. Ct. 1089, 67 L. Ed.2d 207 (1981) (citation omitted). If HP Hood articulates a nondiscriminatory reason for discharging Plaintiff, "the plaintiff can no longer rely on the prima facie case, but must prove that the employer's proffered reason was a pretext for discrimination." *Id.* (internal quotation marks and citations omitted). In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 173, 129 S. Ct. 2343, 174 L. Ed.2d 119 (2009), the Supreme Court eliminated the mixed-motive analysis for ADEA claims. Thus, "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA" must satisfy the ultimate burden on an ADEA claim by presenting facts, which "taken in [his] favor, suffice to ... [show that] a triable issue [exists] as to whether [his] age was a 'but for' cause of [his] termination." *Gorzynski*, 596 F.3d at 106 (quoting *Gross*, 557 U.S. at 180, 129 S. Ct. 2343) (internal quotations omitted).

### B. Analysis of Plaintiff's IDEA Claim

#### 1. Prima Facie Case

To establish a prima facie case of age discrimination under the ADEA, Plaintiff must show that: (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128, 137–38 (2d Cir. 2003)*; Semeraro v. Woodner Co.,* No. 17 CIV. 8535 (ER), 2018 WL 3222542, at *3 (S.D.N.Y. July 2, 2018); *Focarazzo v. Univ. of Rochester*, 947 F. Supp. 2d 335, 338 (W.D.N.Y. 2013). Plaintiff plainly satisfies the first and third elements. He was 55 years old at the time he was discharged. Defendant argues, however, that he fails to satisfy the second and fourth elements.

On the second element, Defendant cites to Plaintiff's disciplinary history and argues that Plaintiff was not qualified for the position because he did not meet the employer's expectations.  In opposition, Plaintiff cites to his 36 years of performance with HP Hood and most recent position as a supervisor as evidence of his qualifications for the position held at the time of discharge.  The Second Circuit characterizes the evidence necessary to establish the prima facie burden as "minimal" or "de minimis," and has recognized that many years of service for an employer satisfies the second element of the prima facie case.  *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76–77 (2d Cir. 2005)(qualifying 16 years of service as a "wealth of experience" evidencing a plaintiff's qualifications).  Moreover, the Second Circuit has articulated an "analytical distinction between (i) qualification for a job and (ii) disqualification arising from a legitimate, non-discriminatory, reason for an adverse employment decision." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006); *see also Owens v. New York City Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991)("[M]isconduct is distinct ... from the issue of minimal qualification to perform a job.")  "Pursuant to *Sista*, Defendant's proffered reasons for [discharge] have no bearing on whether [Plaintiff] met the minimal qualifications to perform the job. Put another way, the fact that [Plaintiff] was not doing the job well does not mean he was not qualified to do it." *Semeraro,* 2018 WL 3222542, at *3.  Thus, Plaintiff has met his minimal burden on the second element of the prima facie case.

On the fourth element, Defendant argues that Plaintiff cannot establish an inference of age discrimination arising from his discharge because the employer first offered his position to an individual who was 51 years old, because two of the three individuals who

14

made the decision to discharge Plaintiff were over 40 years of age, and because Plaintiff has failed to present evidence that any of the supervisors involved in disciplining and or terminating him treated similarly situated younger employees more favorably than they treated Powell.  In opposition, Plaintiff cites to the fact that he was replaced by an individual 29 years of age, references the written statement in former-manager Campbell's office indicating that Plaintiff had "outlived his usefulness for HP Hood," and contends that his conduct on February 15, 2016 was in keeping with unwritten but accepted protocol and therefore was not a dischargeable offense.

Construing the facts in the light most favorable to Plaintiff, and considering only his evidence, *see Graham v. Long Island R.R.*, 230 F.3d 34, 41–42 (2d Cir. 2000) (noting district court's consideration of defendant's evidence was "premature" at the prima facie stage and explaining that "only [plaintiff's] evidence should be considered when deciding whether plaintiff has met his initial burden"), Plaintiff has satisfied his minimal burden on the fourth element of the prima facie case.  A reasonable factfinder could conclude that management at HP Hood was concerned with Plaintiff's age, that it discharged him for conduct that would not have resulted in discharge of a similarly situated individual less than 40 years of age, and that Plaintiff's discharge was a pretext to hiring a younger individual in his position.

### 2.  Legitimate, Nondiscriminatory Reason for Discharge

Turning to the second *McDonnell Douglas* step, Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's discharge.  Namely, Defendant asserts that Plaintiff was terminated for poor performance and repeated unprofessional conduct.

This satisfies Defendant's burden. *See Slattery v. Swiss Reins. America Corp.*, 248 F.3d 87, 93 (2d Cir. 2001) (finding that because the defendant's dissatisfaction with the plaintiff's performance was "well-documented," the defendant "easily met its burden of demonstrating a legitimate, non-discriminatory reason for its actions"); *Duprey v. Prudential Ins. Co. of Am.*, 910 F. Supp. 879, 887 (N.D.N.Y. 1996) ("Failure to perform her job duties to the satisfaction of her supervisors, defendants' stated and well-documented reason for terminating plaintiff, is a legitimate, nondiscriminatory reason for discharging her."); *Fosen v. NY Times*, 2006 U.S. Dist. LEXIS 75662, at*22 (S.D.N.Y. Oct. 11, 2006) (finding that defendant's "[d]issatisfaction with Plaintiff's work performance and on-the job conduct constitutes a legitimate, non-discriminatory reason for Defendant's actions.").

### 3.  Plaintiff's Ultimate Burden

The burden is now shifted back to Plaintiff to prove that the employer's proffered reasons were pretext for discrimination and that, but for Plaintiff's age, he would not have been discharged.  Powell argues that he established pretext because (1) he saw a statement in his manager's office indicating "that Peter Powell outlived his usefulness for HP Hood"; (2) Plaintiff properly responded to the system malfunction on February 15, 2016 and, therefore, should not have been terminated; (3) he was replaced by a younger employee; and (4) his termination on February 16, 2016 was preceded by a paper trail of several manufactured disciplinary events which were intended to pre-textually excuse or justify Defendant's termination from employment. These facts, even when considered as a whole, do not provide sufficient evidence from which a reasonable factfinder could conclude that HP Hood's proffered reasons for Plaintiff's discharge were pretext for discrimination

and that, but for Plaintiff's age, he would not have been discharged.

### a. Campbell's Note

Turning first to the note that Plaintiff saw into Campbell's office, there is no dispute that Campbell did not participate in the decision to terminate Powell. Further, the note was observed by Plaintiff approximately 10 months before he was discharged. This statement by a non-decision-maker made at a time attenuated from the discharge determination provides little evidence of discrimination by the employer. In addition, the statement - which does not appear in Powell's employment folder and which is not corroborated by deposition testimony from Campbell - is ambiguous as to whether it was intended as a comment on Plaintiff's age or his failure to diligently perform the functions of his job after many years in the position.[3] It is also important to note that Plaintiff testified that Campbell did not discriminate against him because of his age. Pl. Tr. at 101. Moreover, Powell does not allege any other instances in which Campbell, or any other employee of HP Hood, made a discriminatory comment about Plaintiff's age.

"[I]t is well-established that stray remarks, even if made by a decision maker, without more, do not constitute sufficient evidence to make out a case of discrimination." *Brollosy v. MaNgolin, Winer & Evens, LLP*, 2006 U.S. Dist. LEXIS 85484, at *28 (E.D.N.Y. Mar. 20, 2006)(citation omitted). Further, "[c]ourts within the Second Circuit . . . frequently find uncorroborated statements insufficient to defeat summary judgment unless the person making the remarks makes repeated statements clearly indicative of age-based preferences

---

[3]The note was observed only 2 months before Johnson issued a Memo of Expectations on June 11, 2015. The June 11, 2015 Memo of Expectations was issued because, *inter alia*, "[d]uring the past few months there has been a noticeable decline in [Plaintiff's] performance and attitude. This is seen in [Plaintiff's] comments, actions and lack of performance," and because Plaintiff made the statement "I am burnt out I do not do things because I do not want to." Def. Stat. Facts, 19(e); Def. Ex. 14.

or discriminatory motive." *Young v. Pztney Bowes, Inc.*, 2006 U.S. Dist. LEXIS 20788 at

*57-*58 (D. Conn. Mar. 21, 2006).  Here, the statement that "Powell has outlived his

usefulness at HP Hood" amounts to a stray remark by a non-decision-maker which provides

little, if any, evidence of discriminatory animus by the employer.  *See Hatter v. Fulton*, 1997

U.S. Dist. LEXIS 10429, at **14-15 (S.D.N.Y. Jul. 21, 1997)(granting summary judgment for

employer, finding that supervisor's comment that the company "needs young people" was

merely a "stray utterance that is insufficient to give rise to an inference of discrimination");

*Buompane v. Citibank, N.A.*, 2002 U.S. Dist. LEXIS 6692, at *44-*44 (S.D.N.Y. Apr. 18,

2002) (granting employer's motion for summary judgment on age discrimination claim,

despite decisionmaker's comments that she wanted an "energetic young buck," and sought

a "young, energetic, fresh approach"); *Pasha v. William M. Mercer Consulting, Inc.*, 2004

U.S. Dist. LEXIS 1226, at * 16 (S.D.N.Y. Feb 2, 2004)(executive's comment to 54-year-old

plaintiff that "we should be thinking of retiring at our age" was "no more than a passing

flippancy" and "too immaterial to withstand a properly-supported motion for summary

judgment.").

### b.  February 15, 2016 Incident

Plaintiff fails to establish that his discipline for the February 15, 2016 incident was

pretext for discrimination.   Although Plaintiff contends that he properly responded to the

system malfunction on February 15, 2016, he states in his affidavit that he was told by

Stasio that a cottage cheese blender was "blending at 46 degrees," which was "over the cut

off temp," and therefore it "[s]hould not have been blending at all." Powell Aff. ¶¶21, 21(b).

He further indicates that it was "HP Hood[']s procedure" to "shut down if over 45 degrees,"

18

and that there should have been no "blend[ing] at all" on that day.  *Id.* ¶¶ 24, 24(b).

Although he now argues that could have added blocks of ice to cool the temperature "even

though it may not have been protocol pursuant to written guidelines," he does not claim that

he added these blocks of ice or that he told the plant manager that the cottage cheese had

been blended at an improper temperature.  Further, at his deposition Plaintiff testified that

when Stasio told him that the cottage cheese blender was processing at an exceptionally

high temperature, he stated "What do you want me to do, put ice cubes in it? I can't cool it",

and did not direct Stasio to stop blending the product. (Pl. Tr. 53).  Plaintiff's  contention that

the improperly blended cottage cheese batch could have been "reworked" to save the

product is insufficient to contradict the employer's determination that the entire batch was a

loss because of it was blended at an improper temperature.  Moreover, despite that Plaintiff

asserts that the improperly blended product was the responsibility of the previous shift

supervisor who left when Plaintiff arrived at work, Plaintiff does nothing to rebut the

employer's contention that Plaintiff, as a supervisor on the shift where the improper blending

was discovered, should have advised management of the situation.  Thus, the facts

presented on this issue, even when viewed in the light most favorable to Plaintiff,

demonstrate that Plaintiff failed to abide by and fulfill his employer's requirements and

expectations.  The discrimination laws are not invitation for the court's "to 'sit as a

super-personnel department that reexamines' employers' judgments." *Ya-Chen Chen v. City

Univ. of New York*, 805 F.3d 59, 73 (2d Cir. 2015) (quoting *Delaney v. Bank of Am. Corp.*,

766 F.3d 163, 169 (2d Cir.2014)(*per curiam*)).  Given the undisputed facts relevant to this

issue, Plaintiff's disagreement with the employer's determination that the improperly

blended cottage cheese was a total loss is of no moment.  The employer's determination to discipline Plaintiff because of the situation on February 15, 2016 permits no inference that the employer would not have taken the same action but for Plaintiff's age.

Further, as Defendant argues, whether or not Plaintiff properly responded to the cooling system failure is irrelevant to the merits of the age discrimination claim.  "[I]t is well settled that the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination." *Kalra v. HSBC Bank U.S., N.A.*, 567 F. Supp. 2d 385, 397 (E.D.N.Y. 2008).  As the district court stated in *Droutman v. N.Y. Blood Ctr.*, "[a]n employer's good faith belief that an employee engaged in misconduct is a legitimate reason for terminating [him], and the fact that the employer is actually wrong is insufficient to show that the alleged misconduct is a pretext for discrimination.*"* 2005 U.S. Dist. LEXIS 42951, *27-*28 (E.D.N.Y. July 27, 2005)(citations omitted).  "Thus, even assuming a factual issue regarding whether an employee engaged in the misconduct for which [his] employer claims [he] was fired, and even assuming that [he] did not in fact engage in the misconduct, where the employer presents evidence showing that it believed that [he] had engaged in the misconduct and based its decision to terminate [him] on that belief, the employer's error does not constitute pretext."  *Id.*

### c.  Replaced by a Younger Employee

Likewise, the fact that Plaintiff was replaced by a younger employee after his discharge provides little inference from which a reasonable factfinder could conclude that

20

Plaintiff would not have been discharged but for his age.  Here, the facts are undisputed

that after Plaintiff was discharged, the employer first offered his position to an individual who

is approximately the same age as Plaintiff.

### d. Paper Trail of Manufactured Disciplinary Events

Plaintiff's argument that he was subjected to a paper trail of manufactured

disciplinary events intended to justify his termination is insufficient to defeat summary

judgment.  As indicated above, other than Plaintiff's conclusory allegations, he provides

insufficient admissible evidence challenging the facts underlying four of the six disciplines

he was subjected to in the years leading up to his discharge.  Plaintiff has failed to

challenge the employer's determination that he  engaged in unacceptable workplace

behavior and violence on September 13, 2012; that he engaged in similar behavior (and

received a final warning) on April 24, 2013; that he failed to live up to the employer's quality

and documentation expectations (and received a two day suspension) on April 30, 2014;

and that, in June 2015, he failed to live up to the employer's performance, professional

conduct, and leadership expectations, and even stated to the Operations Manager that he

was "burnt out" and did not do things he did not want to do. These undisputed facts hardly

amount to a manufactured paper trail intended for the purposes of discharging Plaintiff

because of his age.

Moreover, the two challenged disciplines (viewing the note in Campbell's office and

the February 15, 2016 cottage cheese blending situation) provide insufficient facts  from

which to conclude that the disciplines were pretext for discrimination.  While the letter in

Campbell's office may have been some indication of Campbell's consideration of Plaintiff's

age, there is no dispute that Campbell did not participate in the determination to discharge Plaintiff, and Plaintiff testified that Campbell did not discriminate against him based upon Plaintiff's age.  Likewise, Plaintiff does not challenge the facts underlying the February 15, 2016 cottage cheese blending incident, but only argues with the employer's ultimate determination that Plaintiff's handling of the event was a reason to discharge him.

### e.  Totality of the Circumstances

Plaintiff's argument that he was discharged because of his age is based upon his speculation arising from Campbell's letter and the fact that, after the February 15, 2016 incident, he was ultimately replaced by a younger individual.  However, given the totality of circumstances, including Plaintiff's disciplinary history leading up to his discharge and the fact that the employer determined that Plaintiff improperly handled the cottage cheese blending situation (whether or not it was Plaintiff's responsibility to report it), there are insufficient facts from which a reasonable factfinder could conclude that HP Hood's determination to discharge Plaintiff would not have been made but for Plaintiff's age. Accordingly, Defendant's motion for summary judgment is granted.

## V.    CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgement,  Dkt. # 22, is **GRANTED** and Plaintiff's Complaint is **DISMISSED**.  The Clerk of the Court is respectfully directed to close the file in this action.

**IT IS SO ORDERED.**

Dated:August 28, 2018

Thomas J. McAvoy
Senior, U.S. District Judge

22